**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**In re SALE OF LEASEHOLD INTEREST TO A & G PLASTICS CORPORATION.**

**No. 70–347.**

United States District Court, E. D. Pennsylvania.

April 14, 1976.

John B. Rossi, Jr., Philadelphia, Pa., for the Trustees, Penn Cent. Transp. Co.

Edith I. Spivack, New York City, for the City of New York.

Debevoise, Plimpton, Lyons & Gates, by Michael E. Patterson, New York City, for Provident Nat. Bank.

Gratz, Tate, Spiegel, Ervin & Ruthrauff, by Wilbur Bourne Ruthrauff, Philadelphia, Pa., for Richard Joyce Smith, Trustee, New York, New Haven & Hartford Railroad Company.

## MEMORANDUM AND ORDER NO. 2315

FULLAM, District Judge.

Pennsylvania Tunnel & Terminal Railroad Company ("PTT") is a wholly-owned subsidiary of the Debtor, but is not itself in reorganization. Effective as of July 1, 1928, PTT leased all of its properties to the Debtor for a term of 999 years. The lease has been neither affirmed nor disaffirmed by the Trustees of the Debtor.

The Trustees seek approval of a proposed sale of their leasehold interest in a small portion of the demised premises, viz, a parcel containing 5.02 acres, located between 6th and 8th Avenues in Brooklyn, New York. It is the site of a former engine house and is no longer used for rail operations. It has not been designated for conveyance pursuant to the Final System Plan under the Regional Rail Reorganization Act of 1973.

The Trustees' leasehold interest in the property is subject to the lien of trustees certificates issued pursuant to Order No. 124. Both the Trustees' leasehold interest and the fee interest held by PTT are subject to a mortgage and assignment held by Provident National Bank and one A. Wakelee Schwartz, Jr. ("loan trustees"). The property is subject to the lien of real estate taxes owing to the City of New York for the years 1970 to date.

The proposed purchaser, A & G Plastics Corporation, has offered to pay $603,000 in cash for a fee title to the property, free and clear of all liens and encumbrances. The record establishes that this price is fair and adequate, and that the proposed transaction would be in the best interests of the Debtor's estate and of all other parties involved.

The proposal contemplates that the proceeds of the sale would be placed in escrow, and that all liens on the property would be transferred to the proceeds. The City of New York objects to this arrangement, arguing that this Court lacks the power to authorize a sale of the property free and clear of liens and encumbrances, since PTT is not in reorganization. The loan trustees are willing to have the lien of their mortgage transferred to the proceeds, but only if this can be accomplished without a binding adjudication that this Court does have jurisdiction, under § 77(o) of the Bankruptcy Act, to order sales, free and clear of liens and encumbrances, or properties owned by solvent subsidiaries and leased to the Debtor.

I do not believe the present case is an appropriate one for resolution of issues concerning the extent of a reorganization court's jurisdiction over property of solvent lessors. Here, the solvent lessor is anxious to consummate the transaction, and the mortgagee is willing to release its mortgage and transfer the lien to the proceeds, so long as it is not required to concede that this Court could require it do so without its consent. The chief goal of the City of New York, understandably enough is to collect whatever taxes it can; its interest in the ultimate legal issue of the extent of this Court's jurisdiction under § 77(o) is marginal at best. More importantly, as will be discussed below, the amount of the City's tax lien which would be divested as a result

of assertion of this Court's jurisdiction over the fee interests of PTT (as distinguished from the amount of the tax lien which could undeniably be divested by virtue of this Court's clear jurisdiction over the Debtor's leasehold interest), is probably quite small. Rather than have such large issues decided in a struggle over such small stakes, it seems preferable to require the payment, rather than divestiture, of that portion of the lien which could be divested only by the exercise of questioned jurisdiction by this Court.

Viewing the situation as it existed when the agreement of sale was entered into, and when the petition now before the Court was filed, the Trustees are the owners of a leasehold interest in the property, under a lease which has more than 950 years to run. Assuming, for the sake of argument, that the City is correct in contending that this Court lacks jurisdiction under § 77(o) to divest liens applicable to the fee interest owned by PTT, it is nevertheless clear that this Court has jurisdiction to direct the sale of the Trustees' leasehold interest free and clear of all liens and encumbrances, and to transfer such liens and encumbrances to the proceeds. The asserted lack of jurisdiction over property of PTT would not preclude the Reorganization Court from restraining the City of New York from attempting to enforce its liens in ways which would deprive the Trustees of their leasehold interest in the property.

On the other side of the coin, the only thing which prevents the Court from ordering the Trustees to pay all of the taxes attributable to the property out of the proceeds of the sale is the absolute priority rule; administration claims and the lien of trustees certificates presumably prime the City's tax lien, insofar as the Trustees' leasehold interest is concerned.

It is to the advantage of the City, as well as all of the other parties in these proceedings, to permit the sale to go through, and to confine their litigation to the proceeds. At the risk of over-working a useful legal principle, I conclude that this Court at least has jurisdiction to decide the jurisdictional issues, and to attempt to devise solutions which will obviate the necessity for deciding the jurisdictional issues; and that this initial jurisdiction carries with it the equitable power to arrange matters so that no harm comes to the Debtor's estate while the process of resolution of avoidance is carried out.

If the record permitted a finding as to the precise amount of taxes owing to the City of New York allocable to the 5.02-acre tract in question, one step in the process could be eliminated. Unfortunately, it appears that the parcel in question represents only a small part of a larger tract against which the taxes are assessed. Once the proper allocations have been made, it will then be possible to resolve questions concerning the possibility and propriety of a further allocation as between the fee ownership of PTT and the leasehold interest of the Trustees. If the City is correct in its assertion that the entire amount of tax liens on the 5.02-acre parcel are attributable to the PTT interests, then payment at this time would not violate the absolute priority rule. If the City's position on this issue is incorrect, then whatever proportion of the taxes is properly attributable to the PTT interests can be paid out of the proceeds, and the balance of the City's lien would continue as a lien against the escrowed proceeds.

Ordinarily, it would be preferable to have these matters resolved in advance of the conveyance, and specified in the Court's initial Order. However, if that course were followed in the present case, the sale would fall through, because the purchaser will cancel the agreement of sale unless conveyance can take place before April 30, 1976. Since the fee owner and mortgagee are willing to have the sale go through, and since the escrowing of the proceeds will amply protect all parties in the interim, I am satisfied that, irrespective of the basic jurisdictional issue asserted, this Court has jurisdiction to permit the consummation of the sale. This is not a situation in which the City's lien would simply be transferred to the proceeds and remain there for dispo-

sition in a reorganization plan; rather, to the extent the City's position proves meritorious, its position will be fully vindicated by payment of the appropriate amount within a reasonably brief time after the sale.

### ORDER NO. 2315

AND NOW, this 14th day of April, 1976, upon consideration of the Petition of Trustees for Authority to Convey their Leasehold Interest in Real Estate in Brooklyn, New York, to A & G Plastics Corporation (Document No. 9465) (the Petition), it is hereby ORDERED:

1. The Trustees or their duly-authorized designees are hereby authorized to convey, at private sale, free and clear from all liens and encumbrances, their leasehold interest in the properties described in the Petition for the consideration and on the terms set forth therein, and to execute and deliver any documents necessary to effectuate said transaction.

2. The liens upon the subject property, including the lien of the Pennsylvania Tunnel and Terminal Railroad Company Mortgage (the mortgagees having consented thereto), shall attach, at the time of sale, in the order of their respective priorities, to the net proceeds of sale and to any income or interest earned thereon.

3. The net proceeds of sale of the subject properties, after deduction of the expenses of sale, shall be deposited promptly upon receipt by the Trustees, subject to all liens and claims thereon, with Provident National Bank, Philadelphia, Pennsylvania, to be held by it, in a separate account, subject to further order of this Court, and invested at the discretion of the Trustees, or their duly-authorized designees and to the extent feasible in certificates of deposit of any bank or trust company or short-term securities of the United States Government or any agency thereof. Any income on said account shall be held in said account and invested in like manner.

4. The Trustees shall proceed promptly to obtain a determination, by agreement or otherwise, of the amount of taxes owing to the City of New York allocable to the 5.02-acre parcel in question. Thereafter, upon application by the City of New York, by the Trustees, or both, this Court will direct immediate payment to the City of New York of such taxes, or such portion of said taxes, the lien of which could not, without such payment, be divested under § 77(o) of the Bankruptcy Act, or in the absence of a decision of that issue.

5. This Order is without prejudice to the contentions of any of the parties with respect to whether this Court does or does not have jurisdiction over properties of nonbankrupt subsidiaries which have leased their properties to the Debtor.